### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HAROLD JEAN-BAPTISTE**, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-01499 (TNM) |
| **BOOZ ALLEN HAMILTON, INC.**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Harold Jean-Baptiste demands $450 million from Booz Allen Hamilton.  Why?  Because, he says, Booz Allen conspired with the FBI to toss him out of his job and arrest him for being black.  But now the parties have each moved for summary judgment, and Jean-Baptiste comes to the Court empty-handed.  So the Court must grant Booz Allen's motion and end this case.

## I.

In mid-2019, Booz Allen Hamilton hired Harold Jean-Baptiste to work in a Data and Analytics Unit that "was tasked with helping Booz Allen become more data driven."  MaryJo Robinson Aff. (Robinson Aff.) ¶¶ 1–2, ECF No. 61-3.  Around September of that year, Booz Allen decided to move the Data and Analytics Unit's offices from one building to another.  *Id*. at 2–3; Jean-Baptiste Dep. Tr. at 56:5–12, ECF No. 61-7.  Before the move, an HR representative emailed Jean-Baptiste to let him know "two people" would be visiting his office "to see what we [were] moving" and for "cleaning."  Jean-Baptiste Dep. Tr. at 56:5–12.  At some point while Jean-Baptiste's officemate was away, Booz Allen's facilities manager went to the office "in connection with preparing for the move."  Robinson Aff. at 2–3.

Jean-Baptiste believes that the facilities manager was an FBI plant.  Jean-Baptiste Dep. Tr. at 56:16–57:17.  Two clues tipped him off.  First, he "know[s] all the cleaning staff" at Booz Allen.  *Id*. at 56:20–22.  The cleaning staff are "all Spanish" and "all female."  *Id*. at 56:23.  As he tells it, there are "no white male and white female, middle age" cleaning staff at Booz Allen. *Id*. at 57:1–4.  Thus, because the facilities manager who visited his office was a middle-aged white man, *id*. at 58:13–14, Jean-Baptiste knew that he *must* be an outsider.

Second, this was the first time anyone had ever warned Jean-Baptiste before cleaning staff came to his office.  Jean-Baptiste Dep. Tr. at 57:5–8.  The cleaning staff would just "come every day and vacuum, every morning they come."  *Id*. at 57:8–9.  So the fact that Booz Allen told him facilities staff would be coming by was "strange."  *Id*. at 57:9–11.  As he put it, "I was, like, why are you telling me this?  That's not necessary."  *Id*. at 57:12–13.  Armed with such proof, Jean-Baptiste was confident that the facilities manager was a spy for the FBI.

At about the same time, Booz Allen staff grew concerned about Jean-Baptiste's job performance.  Chimisa Walker Aff. (Walker Aff.) ¶ 2, ECF No. 61-4.  Specifically, Jean-Baptiste failed to adequately fill his timesheets and had trouble interacting appropriately with coworkers. *Id*.  But when his boss reported these problems to HR, Jean-Baptiste "filed a[n internal] complaint alleging discrimination and violation of his privacy rights."  *Id*.  In that complaint, he said that "he was being spied on and that the FBI had been retained to question him."  *Id*.  When an HR representative denied this, Jean-Baptiste responded that "there are little white men in white coats under my desk spying on me."  *Id*.

Booz Allen placed Jean-Baptiste on paid leave and investigated.  Walker Aff. ¶ 3. Because of the nature of his claims, it also required Jean-Baptiste to submit to a "fitness for duty

evaluation" before being allowed to return to work.  *Id*.  Jean-Baptiste refused, so Booz Allen fired him.  *Id*.

Jean-Baptiste did not go quietly.  Instead, he filed this lawsuit.  *See* Compl., ECF No. 1. His Complaints allege "collusion and conspiracy" between Booz Allen and the FBI.  Amend. Compl. ¶ 1, ECF No. 3; *see generally* Compl.  Stemming from that conspiracy, Jean-Baptiste alleges that Booz Allen violated a host of laws.  First, his "Human Rights to be free and have equal dignity and rights."  Amend. Compl. ¶ 26.  Second, a series of statutes: 18 U.S.C. § 241; 42 U.S.C. §§ 1983, 1985(3), 1986, 2000e-2, and 2000e-3.  *Id*. ¶¶ 27, 30, 31, 33, 34, 37–38. Third, the Virginia law of defamation.[1]  *Id*. ¶ 29.  Fourth, the Electronic Communications Privacy Act, Pub. L. No. 99-508, 100 Stat. 1848 (1986).  Amend. Compl. ¶ 35.  And last, the Fourth and Ninth Amendments.  *Id*. ¶¶ 27, 35–36.  The Court dismissed the bulk of those claims by prior order.  *See generally Jean-Baptiste v. Booz Allen Hamilton, Inc.*, 630 F. Supp. 3d 88 (D.D.C. 2022), *largely affirmed*, 2023 WL 2190628 (D.C. Cir. Feb. 22, 2023) (per curiam).

## II.

The parties have moved—and cross-moved—for summary judgment.  So the Court applies the shopworn Rule 56 standard to decide their motions.  Under that standard, the Court must grant summary judgment to a party when "there is no genuine dispute as to any material fact" and that party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To determine whether there is a "genuine dispute as to any material fact," the Court must ask itself whether any reasonable jury could find for the nonmoving party at trial.  *Id*.; *Anderson v. Liberty*

---

[1] He also alleges that Booz Allen defamed him in violation of 28 U.S.C. § 4101.  Amend. Compl. ¶ 32.  But § 4101 is not an antidefamation statute.  It is the definition of defamation in the SPEECH Act, Pub. L. No. 111-223, 124 Stat. 2380 (2010), a statute that regulates domestic recognition of foreign defamation judgments.

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  This serves the core function of summary judgment: to "avoid the expense of trial where a trial would be a useless formality because no factfinder could find for the nonmoving party."  *Mass. Coal. for Immigr. Ref. v. U.S. Dep't of Homeland Sec.*, 698 F. Supp. 3d 10, 21 (D.D.C. 2023) (cleaned up).

Because Jean-Baptiste is a *pro se* litigant, he is entitled to special solicitude.  *Pro se* parties are held "to less stringent standards" than those represented by counsel.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  So, for instance, courts "construe *pro se* filings liberally," *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), and give them a hard look to ensure that meritorious claims are not defeated by inartful pleading, *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007).  But ultimately, that special solicitude is only a rule of construction.  It does not relieve a *pro se* litigant of his evidentiary burdens under Rule 56.  *Cf. Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### III.

Jean-Baptiste's sole surviving claim is that Booz Allen "willfully and negligently conspire[d] to interfere with civil rights, deprivation rights, privileges, or protected by the Constitution or Laws of the United States."  Amend. Compl. ¶ 34.  The Court takes this as alleging that Booz Allen conspired with the FBI to deprive him of "the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).

A successful § 1985(3) claim has five components:  First, "a plaintiff must prove . . . the existence of a conspiracy between two or more persons."  *Newman v. Howard Univ. Sch. of L.*, --- F. Supp. 3d ---, 2024 WL 450245, at *9 (D.D.C. 2024) (cleaned up).  Second, he must prove that the conspiracy was "motivated by some racial animus."  *Id.* (cleaned up).  Third, the conspiracy must have been "aimed at interfering with rights that are protected against private, as

well as official, encroachment." *Id*. (cleaned up).  Fourth, the plaintiff must identify "a concrete act in furtherance of the conspiracy." *Id*. (cleaned up).  And finally, he must show some "resulting injury either in the form of pecuniary harm or deprivation of a right." *Id*.

## A.

Jean-Baptiste has essentially conceded both his motion and Booz Allen's cross-motion. Whether a party is asserting that a material fact is not genuinely in dispute (in his motion) or asserting that it is (in opposing a cross-motion), he must provide specific citations to the record evidence supporting that claim.  Fed. R. Civ. P. 56(c)(1)(A); L. Civ. R. 7(h).  This Court's Standing Orders elaborate on that rule, requiring a "short and concise statement" in "numbered paragraphs," each of which contains "only one factual assertion."  Standing Order ¶ 14(B)(iii), ECF No. 4.

Jean-Baptiste filed two documents, each titled "Statement of Material Facts."  ECF Nos. 56 & 57.  But those statements are at sixes and sevens.  First, the vast majority of each fails to reference admissible materials in the record in *this* case, as the rules require.  Fed. R. Civ. P. 56(c)(1)(A); L. Civ. R. 7(h).  Second, what materials Jean-Baptiste cites that *are* in this record are procedurally defective.  *See* Standing Order ¶ 14(B)(iii).  Because all the contents of his statements are improper, Jean-Baptiste has failed to provide a rules-compliant statement of material facts.  He has therefore effectively conceded Defendant's own statement of facts and its cross-motion.

To start, Jean-Baptiste's statements generally refer to two classes of evidence: recitations from his complaints in other cases, *e.g.*, First Statement ¶ 1(a), ECF No. 56, and unsworn and unauthenticated transcriptions of what are alleged to be deposition responses from other cases, *e.g.*, *id*. ¶ 1(b).  Neither flies.

The citations to complaints in other cases are insufficient under Rule 56.  That is for three reasons.  First, as "mere allegations," complaints cannot be relied upon at the summary judgment stage of a case.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up).  Second, because the complaints are from other cases, they are not "in the record" here, and therefore cannot be relied on at summary judgment.  Fed. R. Civ. P. 56(c)(1)(A).  And third, because the allegations are disputed, the Court cannot take judicial notice of them to incorporate them into this record.  *See* Fed. R. Evid. 201(b).  So none of the citations to complaints in other cases can be considered.

But neither can the alleged deposition answers.  Jean-Baptiste reprints what he claims are individual witnesses' responses to deposition questions in other cases.  *E.g.*, First Statement ¶ 1(b) ("Deposition Question #4,8,11,16,17,18,22,24" under the heading "In Complaint Case#21-CA-377 B, Page #3, Section 7.a").  Deposition answers generally *could* satisfy Rule 56's requirements.  Fed. R. Civ. P. 56(c)(1)(A).  But these do not.  Just as before, because they are deposition answers in *other* cases, and no deposition transcript has been supplied through discovery, they are not in the record in *this* case and cannot be considered.  *Id.*

But apart from that Rule 56 problem, the fact that the depositions are from other cases provokes evidentiary problems too.  For one, Jean-Baptiste's recitation of deposition answers is inadmissible hearsay.  Jean-Baptiste is attempting to relay to the Court what someone else said outside of this case.  And he is attempting to rely on those out-of-court statements for the truth of the matters asserted in them.  But this is classic hearsay: one man repeating what another said, and demanding the Court accept that statement as true.  Fed. R. Evid. 801(b).[2]  And "sheer

---

[2] This is true whether one construes Jean-Baptiste as repeating the statements of the deponents at their depositions or instead as repeating the text of the deposition transcripts.  Either way, he is offering an out of court statement (written or oral) and demanding the Court take it as true.

hearsay" "counts for nothing on summary judgment." *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007). So the deposition transcripts cannot be considered for that reason too. *Accord Wilson v. DNC Servs.,* 417 F. Supp. 3d 86, 97–98 (D.D.C. 2019) (refusing to consider hearsay from affidavit to support §1985(3) claim).

For another, Jean-Baptiste's failure to provide the deposition transcripts renders his recitations inadmissible under the best-evidence rule. Simply put, when a litigant wants to "prove [the] content" of a document, he *must* introduce the "original writing, recording, or photograph." Fed. R. Evid. 1002. He cannot just relay what was in it. The "original writing" would be the deposition transcripts. *Id.* But Jean-Baptiste does not provide them. So in addition to being hearsay, his game of transcript-telephone violates the best-evidence rule too. *See Jeffries v. Barr*, 965 F.3d 843, 850 n.1 (D.C. Cir. 2020) (holding that violation of best-evidence rule can render evidence inadmissible at summary judgment stage).

So what is left? Two things. First, Jean-Baptiste has a series of statements titled "imputation of guilt." *E.g.*, First Statement at 2, 6, 7. In these, he notes that "immunity was provided" to the FBI in other cases, *id.*, and argues that the FBI has thus conceded the facts in those cases, Jean-Baptiste Motion at 6–7, ECF No. 58. And second, he offers a series of photographs directly in his statements of fact. *E.g.*, First Statement at 6, 7, 8.

These remnants are doubly unavailing. For one thing, the "imputations of guilt" are not facts in the record, but legal arguments based on the FBI's conduct in other cases. They thus do not qualify as facts that can support a motion for summary judgment or an opposition to a cross-motion. *See* Fed. R. Civ. P. 56(c)(1)(A). And for another, the photographs cannot be considered because they violate the local rules. The statement of facts cannot be used to introduce evidence into the record itself. Instead, it is meant to be solely a written articulation of evidence provided

elsewhere. *See* L. Civ. R. 7(h); Standing Order ¶ 14(B)(ii). So although properly introduced photographs can be considered at the summary judgment stage, *see* Fed. R. Civ. P. 56(c)(1)(A), they cannot replace the statement of material facts itself. And that is just how Jean-Baptiste tries to use them here.

There is therefore no portion of Jean-Baptiste's statements of material facts that complies with the Federal Rules, Local Rules, and this Court's Standing Orders. So Jean-Baptiste has failed to file an appropriate statement of undisputed material facts in support of his motion, or a statement of disputed material facts in opposition to Booz Allen's cross-motion. For that reason, the Court construes Jean-Baptiste as having conceded Booz Allen's facts and motion. Fed. R. Civ. P. 56(e).

### B.

But even if Jean-Baptiste's statements of material facts are properly before the Court, they still do not help him. Those statements provide no evidence that would enable a jury to find for him on even one of the five § 1985(3) elements. At this stage in the case, Jean-Baptiste "must set forth by affidavit or other evidence specific facts" suggesting he is entitled to relief. *Lujan*, 504 U.S. at 561 (cleaned up). This he has not done.

Jean-Baptiste's statements of material facts feature a series of unresponsive snippets from complaints and depositions taken in other cases. *Id*. The complaints are insufficient at the summary judgment stage. *Lujan*, 504 U.S. at 561; Fed. R. Civ. P. 56(c)(1)(A). And even if the deposition responses are considered admissible, they communicate nearly nothing of relevance. Almost every quoted deposition answer is simply a Booz Allen employee disclaiming any knowledge of the relevant events. *See, e.g.*, Second Statement at 3–5, ECF No. 57. Employees' lack of knowledge proves no element of Jean-Baptiste's § 1985(3) claim.

The only thing that might be described as evidence in Jean-Baptiste's filing are 12 photographs.[3]  Second Statement at 6, 7, 9, 12, 14, 15, 17, 19, 20, 21, 22, 23.  But those photographs are also unhelpful.  They count among them images like a screenshot of Jean-Baptiste's Amazon.com shopping cart, *id*. at 6, an email he sent his boss accusing an officemate of having "a mental issue," *id*. at 7, and three unexplained photographs of the interior of a car's engine, *id*. at 21–23.  Others include scans of printed copies of Jean-Baptiste's emails with his employer about an office-wide move.  *Id*. at 9, 12.  Suffice it to say, none of these images indicates anything about whether Jean-Baptiste was the subject of a racist conspiracy, much less whether that conspiracy involved the FBI.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment[] . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 322–23.  That is Jean-Baptiste to a T.  He has produced no evidence—for any element—and therefore cannot survive Booz Allen's Motion for Summary Judgment.

Jean-Baptiste has much in the way of allegations.  *See generally* Compl.; Amend. Compl.  But allegations are no longer enough.  Fed. R. Civ. P. 56(c)(1).  "Summary judgment is the

---

[3] Jean-Baptiste's references to "imputations of guilt" are plainly not evidence either.  These stem from various parties' failure to "provide any response to the Supreme Court petition" for a writ of certiorari, which Jean-Baptiste construes as "admission of default or admission of fact."  Jean-Baptiste Motion at 6.  But a party need not respond to a petition for a writ of certiorari, S. Ct. R. 15.1, and, indeed, parties waive their right to respond to such petitions all the time, *see, e.g.*, *Jones v. Hendrix*, S. Ct. No. 21-857, Dec. 17, 2021 Docket Entry.  So the lack of response elsewhere proves nothing here.

proverbial 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (cleaned up).  Jean-Baptiste has none.  So the Court must grant Booz Allen's motion.  *Celotex*, 477 U.S. at 322.

**C.**

But suppose the Court looked past the *Lujan*-Rule 56 issue, and treated Jean-Baptiste's citations to complaints as evidence.  That is, assume that Jean-Baptiste's statement of facts is akin to an affidavit, and thus admissible as evidence.  Fed. R. Civ. P. 56(c)(1)(A).  It still would not help him.  Even taking the quotations of complaints at face value, Jean-Baptiste has failed to sufficiently support his § 1985(3) claim.

Recall that Jean-Baptiste must adduce evidence creating a genuine issue of material fact as to whether there existed (1) a conspiracy against him that was (2) aimed at interfering with a right private parties are bound to respect and (3) motivated by his race, alongside (4) a concrete act in furtherance of that conspiracy and (5) some resulting injury.  *Newman*, --- F. Supp. 3d ---, 2024 WL 450245, at *9.

To start, Jean-Baptiste provides no evidence that would enable a jury to find that a conspiracy against him existed.  A conspiracy is "an agreement" between two or more people "to commit an unlawful act."  *Iannelli v. United States*, 420 U.S. 770, 777 (1975); *see also Wilson*, 417 F. Supp. 3d at 96 (noting §1985(3) plaintiff must show "meeting of the minds between multiple parties to violate plaintiff's civil rights" (cleaned up)).  Jean-Baptiste provides no evidence of such an agreement.  He does not say who at the FBI spoke with whom at Booz Allen, nor what they agreed to do, nor when, nor where.  *See Scott v. U.S. Dep't of Homeland Sec.*, No. 1:24-cv-00508 (TNM), 2024 WL 3338859, at *2–3 (D.D.C. Jul. 9, 2024).  At most, he

10

says his Booz Allen coworkers "w[ere] instructed by the FBI" to do various things.  Second

Statement ¶¶ 5(e), 6(f).  But even that is not enough.  Complying with the instructions of a law

enforcement officer is different from forming an agreement with one—presumably, no one who

obeys police orders to allow himself to be handcuffed or to get into a squad car is "agreeing" to

be arrested.  And an agreement is what a conspiracy claim requires.  *Iannelli*, 420 U.S. at 777.

        Nor does Jean-Baptiste clearly explain what right the conspiracy inhibited.  Remember,

he "must show" that the conspiracy was "aimed at interfering with rights that are protected

against private[] . . . encroachment."  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263,

267–68 (1993).  So the question is whether he has identified such a right.  At times, he suggests

that the FBI sought to entrap him.  Second Statement ¶ 9(i).  Even if the right to be free from

entrapment is a component of the liberty protected by the Fifth Amendment, *see* U.S. Const.

Amend. V ("No person shall . . . be deprived of life, liberty, or property, without due process of

law."), *that* right is protected *only* against state action, *Public Utils. Comm'n of D.C. v. Pollak*,

343 U.S. 451, 461 (1952).  It offers no protection against private parties, like Defendant here.

*See Newman*, --- F. Supp. 3d ---, 2024 WL 450245, at *9 (holding the right at issue in a

§ 1985(3) claim must be "protected against private, as well as official, encroachment").  It

therefore cannot qualify.  *Id.*; *Bray*, 506 U.S. at 267–68.

        Nor still does he provide proof that such a conspiracy was motivated by his race.  In fact,

he makes no mention of his race at all.  The closest he comes is a conclusory assertion that the

FBI was acting "without respect for the law to discriminate without morality."  Second

Statement ¶ 6(f); *see also id.* ¶ 9(i).  But that alone does not help him.  Even assuming such a

conclusory assertion were enough, Jean-Baptiste never explains what he is being discriminated

against with respect to.  The Court has no way of knowing whether the FBI discriminated against

him because of his race, his sex, his height, or the color of his car.  And § 1985(3), part of the "Klu Klux Klan Act," protects *only* against discrimination based on race.  *Newman*, --- F. Supp. 3d ---, 2024 WL 450245, at *9.  If anything, Jean-Baptiste's Statement suggests any conspiracy was *not* because of his race—he says that the FBI went after him "for 'sport.'"  Second Statement ¶ 6(f).

He has therefore provided no evidence at all to support three of the five elements of his claim.  Each one of those three failures is independently sufficient to doom his case.  When a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322–23.  That happened here thrice over.  And because Jean-Baptiste provided no proof supporting those three elements, "the plain language of Rule 56(c) mandates the entry of summary judgment" against him.  *Id*. at 322.

**IV.**

Jean-Baptiste has substantiated none of the claims he levied against Booz Allen.  The Court will therefore grant summary judgment to Booz Allen and, for the same reasons, deny it to Jean-Baptiste.  A separate Order will issue today.

Dated: July 26, 2024                                            _____
                                                               TREVOR N. McFADDEN, U.S.D.J.